UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. 2:25-MJ-00122 |
| ) | |
| DATO ABULADZE, ) | |
| Defendant. ) | |

**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION FOR DETENTION**

NOW COMES Dato Abuladze, through counsel, and submits this partial response to the government's motion for detention. The government's motion largely relies on the government's contention that the defendant is an undocumented, non-United States citizen ("USC".)

I. <u>There is no serious risk of flight, therefore detention and a detention hearing is not permitted.</u>

The Bail Reform Act authorizes a detention hearing in cases such as this only if there is a "a serious risk of flight." 18 U.S.C. § 3142(f)(2)(A). A "'serious risk of flight' under § 3142(f)(2)(A) is a great risk – beyond average – that the defendant will intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision." *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1138 (D. Idaho 2023).[1] Moreover, it is a serious risk of *flight* and not simply non-appearance, the terms are not synonymous. *Id.* at 1137; *United States v. White*,

---

[1] *See also* Jefri Wood, *The Bail Reform Act of 1984* at 18 (Federal Judicial Center, 4th ed., 2022) ("The inquiry under (f)(2), however, is not categorical but rather requires an individualized assessment of the particular defendant—whether *this* defendant is a *serious* risk to flee" (emphasis in original)).

[1]

2021 WL 2155441 at *8 (M.D. Tenn.) ("It would seem that 'risk of flight' is a subset of 'risk of non-appearance'—meaning that, depending on the circumstances suggesting a serious risk of non-appearance, a risk of non-appearance may not entail a risk of flight.").

Further, courts have noted that the idea that undocumented individuals are more likely than documented individuals or citizens to flee prosecution is mistaken:

> Alien defendants who illegally enter this country, or illegally re-enter this country after removal, do so for many reasons: to flee political persecution in their home country, to flee drug-related violence in their home country, to pursue greater economic opportunity in this country, and to follow friends or family members who already live in this country, just to name a few. But they share a common trait: they voluntarily chose to come to this country and stay here. Presuming that they are any more likely than non-alien defendants to leave this country or the jurisdiction to avoid prosecution – just because they came here from another country – is misplaced.

*Figueroa-Alvarez*, 681 F. Supp. 3d at 1139–1140. Courts have gone further and observed that a history of illegal entry into the United States cannot be equated to a serious risk of flight.

Thus, in *United States v. Romero-Martinez*, 2024 WL 965150 at *4 (D. Conn.), the court overturned the initial decision to detain the defendant and rejected the government's contention "that a risk of flight may be inferred from the fact that Romero-Martinez has a long history of disobeying the law by means of entering and re-entering the United States unlawfully." At a minimum, the repeated illegal entries cuts both ways: "because Romero-Martinez's family ties in Connecticut are very strong, this argument sharply cuts the other way as well. It tends to show that

Romero-Martinez's commitment to be with his family in Connecticut—rather than to hide out in Honduras or elsewhere—is so compelling that he will break the law and risk his freedom to do so." *Id.* The court further explained that:

> The relevant inquiry at this point is Romero-Martinez's risk of flight, not his general propensity to break the law. Although these inquiries overlap to some degree, if the facts of a case suggest that a defendant's primary motive for breaking the law is to enter and remain in the jurisdiction where he is subject to prosecution, these facts make the connection between general law breaking and risk of flight more tenuous. "Indeed, the very act of illegally reentering the United States—knowing that reentry subjects the alien defendant to a potential prison term and certain deportation thereafter—demonstrates a firm resolve to reside in this country, especially when done multiple times."

*Id.*

In addition, it bears emphasis that the lack of any financial resources to mount a sustained flight from prosecution is further evidence that the § 3142(f)(2) requirement has not been met. *United States v. Romero-Martinez*, 2024 WL 965150 at *6 (D. Conn.) (concluding that there was no serious risk of flight because, inter alia, the defendant lacked the financial resources to "feasibly relocate and effectively cover his tracks in doing so.").

    II.    <u>Undocumented, non-U.S. Citizens violate conditions of release at a rate that is a small fraction of the rate that U.S. citizens do.</u>

The government's basic claim—that the defendant should be detained because he lacks status in the United States—is undermined by well-documented research that shows non-USCs violate pretrial at a much lower rate that do citizens. Thus, a Bureau of Justice Statistics report looked at data from 2011-2018 and reached

[3]

several relevant conclusions.[2] Most important is the fact that the data completely undermines the government's contention that being undocumented equates with a risk of flight. *Figueroa-Alvarez*, 681 F. Supp. 3d at 1140 (discussion Bureau of Justice Statistics report).

Within the 2011-2018 period, some 241,000 individuals were released on conditions. The authors determined that U.S. Citizens violated at a rate that is 10-times higher than undocumented individuals (21.8% vs 2.0%).

**TABLE 9**
Defendants released pretrial with cases disposed in federal district courts, by type of release violation and demographic characteristics, FYs 2011–18

| Demographic characteristic | Number of released defendants | At least one release violation | Failure to appear | Technical violation[a] | Rearrest for new offense[b] | Release revoked |
|---|---|---|---|---|---|---|
| Total | 241,164 | 18.9% | 1.0% | 17.2% | 2.1% | 10.5% |
| **Sex** | | | | | | |
| Male | 178,471 | 19.2% | 1.1% | 17.4% | 2.3% | 10.7% |
| Female | 61,285 | 18.1 | 0.9 | 16.8 | 1.6 | 10.1 |
| **Race** | | | | | | |
| White | 164,189 | 16.5% | 1.0% | 15.2% | 1.7% | 9.6% |
| Black | 56,805 | 25.4 | 1.1 | 22.7 | 3.5 | 12.8 |
| American Indian/ Alaska Native | 6,230 | 35.2 | 1.4 | 32.9 | 3.2 | 23.9 |
| Asian | 7,030 | 12.3 | 0.8 | 11.2 | 1.2 | 5.0 |
| Native Hawaiian/ Other Pacific Islander | 856 | 21.4 | 0.4! | 20.9 | 1.1! | 10.3 |
| **Ethnicity** | | | | | | |
| Hispanic | 81,572 | 13.8% | 1.3% | 12.6% | 1.3% | 8.3% |
| Non-Hispanic | 151,737 | 21.7 | 0.9 | 19.8 | 2.6 | 11.8 |
| **Citizenship status** | | | | | | |
| U.S. citizen | 195,609 | 21.8% | 0.9% | 20.0% | 2.5% | 12.1% |
| Documented non-U.S. citizen | 13,295 | 15.3 | 3.4 | 12.6 | 1.6 | 9.0 |
| Undocumented non-U.S. citizen | 28,472 | 2.0 | 0.5 | 1.6 | 0.2 | 1.1 |

Further, only a fraction of released individuals—whether USCs or not—fail to appear as required. In short, the government is mistaken that there is any serious risk of non-appearance.

---

[2] George E. Brown, Suzanne M. Strong, *Pretrial Release and Misconduct in Federal District Courts, Fiscal Years 2011–2018*, Special Report (Bureau of Justice Statistics, March 2022) (available at https://bjs.ojp.gov/content/pub/pdf/prmfdcfy1118.pdf).

III. <u>An immigration detainer is not a basis for pretrial detention.</u>

Mr. Abuladze should not be detained simply because there may be an immigration detainer in place. *United States v. Ailon-Ailon*, 875 F.3d 1334, 1338 (10th Cir. 2017) ("[A] risk of involuntary removal does not establish a serious risk that [the defendant] will flee") *United States v. Ailon-Ailon*, 875 F.3d 1334, 1339 (10th Cir. 2017) ("We hold that, in the context of § 3142(f)(2), the risk that a defendant will "flee" does not include the risk that ICE will involuntarily remove the defendant.") *United States v. Sanchez*, 2025 WL 2101964 at *5 (M.D. Pa. July 25, 2025) (citing cases and explaining "[t]his Court adopts the above interpretation and holds that involuntary, imminent ICE removal cannot qualify as 'flight' under § 3142(f)(2)(A), because the individual is not acting out of their own volition but being removed by a governmental authority. Even the risk of nonappearance at the second step of the process must involve a level of voluntary intent.")

IV. <u>18 U.S.C. § 3142(d) does not apply when an individual is arrested by immigration authorities and then referred for criminal prosecution.</u>

Persuasive authority holds that 18 U.S.C. § 3142(d) does not apply when an individual is arrested by immigration authorities and then referred for criminal prosecution. *United States v. Ailon-Ailon*, 875 F.3d 1334, 1338 n.2 (10th Cir. 2017) ("Because Ailon-Ailon was initially arrested by ICE, it does not appear that the notice provision of subsection (d) applies to this case."); *United States v. Villatoro-Ventura*, 330 F. Supp. 3d 1118, 1124 (N.D. Iowa 2018) ("In this case, ICE brought Villatoro-Ventura to the attention of the USAO, not the other way around. Thus,

the temporary detention provisions of § 3142(d) do not apply.  Instead, Villatoro-Ventura's pretrial release must be resolved pursuant to § 3142(e).").  The purpose of § 3142(d) is to allow time "to notify" immigration authorities.  In this case, however, the immigration authorities were already on notice because they arrested Mr. Abuladze and referred him for prosecution.  Moreover, upon information and belief, the ICE detainer expressly states that Mr. Abuladze has been surrendered for this case and that the immigration authorities only wish him to be returned: "[u]pon completion of the proceeding or investigation for which the alien was transferred to your custody, DHS intends to resume custody of the alien to complete processing and/or make an admissibility determination."  In short, § 3142(d) does not apply and cannot form the basis for any order of detention.

      WHEREFORE, Mr. Abuladze respectfully requests that the Court deny the government's motion for detention and set conditions of release.

Dated: August 27, 2025

                              FEDERAL PUBLIC DEFENDER

                    By:  */s/   Charles N. Curlett, Jr.*
                              Charles N. Curlett, Jr.
                              Assistant Federal Public Defender
                              Office of the Federal Public Defender
                              District of Vermont
                              95 Pine Street, Suite 150
                              Burlington, Vermont 05401
                              802-862-6990

                              *Counsel for Dato Abuladze*